This video was made in Cooperation with Shiga Prefecture Tourism Promotion Division.  This case is No. 51220 Sharp-Kabushiki-Kosha v. Thinksharp, Incorporated. Mr. Biden. Good morning, Your Honors. May it please the Court. This case involves two trademark applications. One for the Thinksharp trademark application and one for the Thinksharp in-design trademark application. Sharp obtained default judgment against the Thinksharp in-design trademark application. The Board said that Sharp could not use that default judgment against the Thinksharp in-design trademark application because the Thinksharp application was pending at the time we obtained default judgment in the Thinksharp in-design application. We believe that's an error of law. The Federal Circuit turns to, or looks to, the secondary statement of judgments for guidance on race judicata issues. Comment A to Section 14 unequivocally states that you can use a final judgment, a default judgment, in any pending case, even though it's been pending, and it does not matter about the order of the cases that were filed. The Trademark Trial Appeal Board has used and followed that same principle in other cases, and we think the Miller-Brewing case is the most like our case. So what happens if we agree with you? What should we do? Well, good question, Your Honor. You can vacate and remand. However, we believe the more appropriate decision would be to reverse because the Federal Circuit has stated for race judicata to apply, you have to have three elements. The same parties, entry of an earlier judgment, and the same transactional facts in the two cases. And the Board didn't really look at that last fact, did it? You're correct, Your Honor, and I will not continue. First two are undisputed, no question. Correct. First two are undisputed. I think that the facts are indisputable on third point, and the Federal Circuit looks pragmatically at that third fact, transactional facts, time, place, are they all similar? I would submit to the Court that these two trademark applications are essentially covering the same mark. And the reason is, if you could turn to page A-75 of the joint appendix. In other words, if they lost on the think-sharp first design, what's there to adjudicate on the word mark? Exactly, and the reason I say that is, everything is identical in the two oppositions. The notices of opposition are identical. Everything is identical. The first dates of usage, the usage themselves, one of the specimens that was supplied in the think-sharp application was the think-sharp and design trademark. Even today, if you go to think-sharp's website, you'll see that the only trademark on that website that has a TM indicator is the think-sharp and design trademark. You can't go to that website today and see just the think-sharp term with a TM indicator by it. Ms. Flax is a very competent attorney, a worthy adversary, but there is one misleading point at the top of page 3 of the red brief, where it says the think-sharp and design trademark was not going to be used after the default judgment was rendered. That's not true. That mark is still used today, and we submit that is the mark that forms the basis for the think-sharp application, which we're here before you today with. So I submit that all the issues or all the facts are indisputable for the transactional facts. Time and place is part of the transactional inquiry. Time and place, those two trademarks have been used simultaneously. They have the same dates of first use. The same specimen, A-75 in the joint appendix, shows the think-sharp and design specimen that was submitted in the think-sharp case. A-76, A-77, and A-78 show the think-sharp and design trademark of those specimens. The trademarks in those are identical. They're identical. Everything else is identical. That is, the goods and services are identical in the two cases. All of the notices of opposition, that is, sharps, sharps contentious in the case are identical. We're using the same exact evidence. It's your position, correct me if I'm wrong, as I understand it, that the application of the doctrine of raised judicata is mandatory if the requirements are met, correct? Correct. I mean the – I guess if you read between the lines, even though the TTAB did not get to the third prong of the transactional prong, I think its decision is necessarily based on the proposition that the doctrine is not mandatory because otherwise they would have had to look at it and apply it, correct? I believe so. I believe it is mandatory because you want to avoid re-litigation, re-litigation of the same issues, judicial economy, and everything else. So it's not – I mean they sort of took a functional analysis that, well, in this case it's not appropriate. Correct, Your Honor. I believe that's correct. Can you cite us to a – what case can you cite us to? Do you have any cases that stand for the proposition that it is mandatory? I do not, Your Honor. I do not. I've looked through the restatement of judgments. I can't find any place where it says it's mandatory. It says raised judicata can be applicable if these different elements are met, same parties, earlier final judgment, same transactional facts or series of facts. But then you look to that, and we believe that all the facts are indisputable. And so we believe the federal circuit, this court, can rule in reverse and doesn't simply have to remand – to vacate and remand back. All the facts are known. There are no – If they did remand, what would the TTAC do? I think they'd have to go back to that third prong. They'd say, okay, the first prong, you've got the same parties. The second prong, you've got an earlier final judgment. That is applicable in this case. They'd look at the third prong. Are the same transactional facts in both cases? And again, we'd submit they are. Everything's identical except when you look at the marks themselves, think sharp or think sharp in design, that is the trademark application, you have a design element. And I won't argue against that. You have a design element. It looks like a sharpened pencil possibly. But if you look further, the basis for that think sharp application as well as the think sharp in design application is the same. The same dates of usage, the same identical identification of goods and services, the same types of specimens supplied in both cases. That's why we submit that the think sharp in design trademark itself, that is the basis for that think sharp application. What is the legal significance of the abandonment of the case involving think sharp plus design? Has that been, as a matter of law, held to the likelihood of confusion? Yes, Your Honor. That was in our notice of opposition, both likelihood of confusion as well as likely dilution. Those have been confirmed by that default judgment. And so is the likelihood of confusion having been in effect adjudicated for the think sharp plus design, if so facto, the word marks have the same result? Yes, Your Honor. Absolutely. Otherwise, you'd have inconsistent results, we contend. Absolutely. Again, I don't want to mislead the Court, though. There are two applications, think sharp trademark application and think sharp in design application. For the think sharp in design application, all the specimens supplied in that case always showed think sharp in design. Now, some of the specimens in the think sharp case did have just some think sharp specimens, but they also had the think sharp in design specimens. Again, we get back to those think sharp in design specimens provide support for that think sharp case. That is the basis for the case, same dates of first usage, same identification of goods and services. Everything is the same. All the contentions we had in both oppositions, the evidence we were proffering, we were going to proffer. Certainly, the two cases could have been consolidated, but they were on two different time tracks without waiving any attorney-client privilege or product. Sharp made the decision, they wanted to get a decision in the first case and use that decision in the second case. We also wanted to avoid the board splitting the baby, which has happened in some other cases. But we do contend these two cases are the same. Grace Judicata should apply. We'd rather see a reversal of this stage than a vacation in the remand battle. Good morning. Two points preliminarily. Under the Miller Brewing case, the applicant, think sharp, did not insignificantly modify its mark after an adverse ruling in order to avoid the res judicata effect of prior ruling. That's a board decision, isn't it? I don't necessarily think that it's a board decision. It's been followed in... Oh, I didn't say it's a board decision, but a board decision. Board decision, I'm so sorry. Which means it's not binding on you. Absolutely, not binding on you. As are the two... You never use the word board. I'm terribly sorry if I misheard you. Yes, it's a board decision, as are the two decisions that we cited in our brief before the court that followed the Miller Brewing case. Think sharp filed both applications in early 1999, the word mark in February, and then developed the design mark at the same time. It decided in June to file that as well, and it is a compass, an old-fashioned map compass. The first opposition was filed a year later in June of 2000. When the second opposition was filed in July of 2001, well into the first opposition proceeding, Think Sharp decided it would not defend the opposition for efficiency and economy reasons. Think Sharp's a tiny company in Bel Air, Maryland that makes software. But that had consequences, didn't it? It did. It did, because there was a default judgment entered. But under the Miller Brewing case, and also under Multimedia Steakhouse and Brown-Forman, you'll excuse me not pronouncing the French plaintiff's name in that case, because I don't want to make things worse. Under all three of those, the precedent of all three of those cases, and they are board rulings, but they are very strong precedents for the proposition that letting the one mark go would not preclude us from defending the claim of likelihood of confusion in the Think Sharp term mark application. It should defend the board's rationale. After all, they're an expert board, and we should be cautious in how we're ruling. The rationale is that the doctrine of res judicata, as stated very succinctly— That's a co-pendency point, isn't it? I'm sorry? Co-pendency point. Absolutely, it's co-pendency. Wright and Miller says— Why should that be persuasive? Because it's fair, and Wright and Miller says that when you apply res judicata, you must take care to ensure the fairness in providing this principle. It is fair because both of the applications were pending at the same time, because the applicant, Think Sharp, did not try to circumvent or do an end run around a bad decision by making minor modifications later after the fact to a mark. They had the right to choose which one to defend. Correct. And they chose the Think Sharp— So what's unfair about what happened? Well, what's unfair is they chose to defend the Think Sharp term mark, which is the broader of the two marks. Had they chosen, it might have been more unfair to choose the design mark, because it's a more specific mark, because it includes the design element. In fact, choosing—and they did choose the broader mark, because that would be a more fair determination of whether there's actually likelihood of confusion with Sharp's marks. And in fact, of course, they prevailed on the merits. Think Sharp prevailed on the merits of delusion, likelihood of confusion, and res judicata after several years of discovery and a full trial. The board correctly ruled that Think Sharp was entitled to decide if it wanted to pursue the registration of only one of its marks rather than defending both positions. Well, but the board necessarily decided the application of res judicata was not mandatory, correct? Correct. And it didn't get to the transactional problem of the res judicata analysis, right? Right. Now, we can go two ways in this case. We can rule in your favor, in which case we affirm, or we can rule the other way. Now, opposing counsel, Mr. Myers, says that, well, if we rule in his favor, we have a choice. We can simply reverse, or we have the option of sending it back to the board to have the board look at the third factor in the res judicata analysis. And he urges us to adopt the first approach, which is reverse. Now, can we decide this case? Can we decide the res judicata issue in your view before us? I mean, in other words, if we disagree with the board, can we, this court, make a determination on the third problem of the analysis? I don't believe so. I believe that it would have to, at a minimum, be remanded to the board for consideration of whether the marks are similar enough that they constitute the same mark or the same claim, be it a claim for the right to register or a claim of likelihood of confusion. They have to constitute the same claim. How can that be a result? Think sharp. To me, it's not the issue here. Think sharp plus design. That's gone. How can think sharp and design be any different? And think sharp and design? They're not? If there's no likelihood of confusion, think sharp and design, how can it be different with the board marks? Well, they have to be legal equivalents, not substantially the same, under the Brown-Poorman case. And I don't think that that was adequately explained by Sharp. These marks are not legal equivalents. They didn't think sharp. Correct. Because of the design element, because of the stylization in the Brown-Poorman case where you have the two marks for mist and cognac and Canadian mist and cognac, the addition of the term Canadian was found to make the marks not legal equivalents for res judicata purposes. In the multimedia statement. They're heavily fact-dependent issues. So aren't they? I don't believe they're fact-dependent issues. I believe that. If adding the word Canadian changes the mark, does that mean that every mark is subject to change? It is no longer subject to likelihood of confusion? The marks change however it's changed? Judge, the marks have to, the differences in the two marks being compared have to be legally insignificant. That is not creating this different commercial impression. Under the precedent of Brown-Poorman and also multimedia steakhouses where you have two marks being exactly the same but one having stylization and the other not. If you look at the mark you love, think sharp, that comes right out of it. Think sharp. It's a little design. But when you then look at the word mark, boy, that isn't fantastic, is it? I don't know what it is. I mean, it's not like you have a great big design and think sharp is a small letter. Well, it is a very prominent design, actually. And the word think sharp is not in typed term mark. It is split up. The font is different. It's on two separate lines. And the compass, I think, is quite prominent in the mark. I think they're quite distinctive as a matter of law. I think that you do not need to send it back. I think that the Brown-Poorman and multimedia steakhouse cases relied not only on that analysis, on the three-pronged analysis of red strudicata, but also on the fact that the marks were pending at the time the first opposition was filed in both of those cases, as it was in this case. I think the facts, particularly the Brown-Poorman case, are absolutely one-off for us with this case and that an affirmation is warranted. Thank you, Ms. Black. Mr. Biden. Your Honors, turning back to the three cases that were just recently discussed by my colleague, Miller-Berling involved two pending applications. The Miller-Berling case involved two pending applications. Default judgment was rendered in one of those cases while the two cases were pending, much like this case. In the Miller-Berling case, not only did the other application add words and design elements, but the board found that red strudicata applied. This case is so much stronger and indisputable because, just like Your Honors have acknowledged, we obtained default judgment against the narrow mark, ThinkSharp and Design. Therefore, we believe it's a very, very strong case against the ThinkSharp mark by itself, especially in view of the fact that, again, the same ThinkSharp and Design specimens are used in both cases. Both cases. Everything else is identical. So we believe the facts are indisputable. Also, the other two trademark trial and appeal court cases that were cited by ThinkSharp, they do have quite different facts. The one case, which is the Institut National, concerned mist and cognac as one trademark. The other trademark was Canadian mist and cognac. Additional word, but the board found there three different reasons not to apply red strudicata. The marks are different, but more importantly, the applicant already owned a registration for Canadian mist. So that came into play. In addition, there was different evidence that came into play in both oppositions. Here in this opposition, the evidence is identical. The marks are effectively the same. We believe red strudicata therefore applies. To rule in your favor as a preliminary matter, am I correct or am I incorrect in thinking that we have to hold that application of red strudicata is mandatory? I don't believe you have to do that because I think what we can say is there are three requirements for red strudicata. Have they been met? And I think they have been met by indisputable facts. Same parties, earlier final judgment, same transactional facts, as confirmed by the record that's below, which we can't change. And those three things... Well, what I'm saying is, assuming you win on all those, in order for us to be able to decide the case here and not send it back, don't we have to say that red strudicata, application of red strudicata is mandatory once the three requirements are met? Yes, Your Honor. I do agree. Yes, I apologize. I do agree with that. If you find those three elements are met, yes, I believe red strudicata is mandatory. But I have not found anything in the restatement or otherwise, Supreme Court cases, that says things are mandatory. Because at base, I think the board's decision is premised on the proposition that it isn't mandatory. If that's the case, I believe they are wrong. That may be, but that seems to be their premise, because they didn't get to the third prompt. So my implication is saying, well, we don't need to reach the third prompt, because even assuming, we nevertheless say, because of the co-pendency, there was no red strudicata. Correct, but I do believe, coming full circle now, I do believe it is mandatory. When you find those three elements, I believe it's mandatory. I don't believe there's ever been a case that would argue against that. Well, that has to be your argument for us to be able to decide the case here. Yes, Your Honor. I don't know, but if a court or a board, for example, through whatever path, such as the path, such as this, and the case, the issues are again before them, and let's say they think that maybe it didn't come out right the first time. I do believe that there is authorization for taking another look in the next case and not following the prior precedent. Isn't that sort of correct as a general rule, or if a body's sense of justice persuades them that the prior decision was wrong, and the issue comes up again, it meets these three prongs of which you've come. I think that what the board may well have in mind, and perhaps particularly because it's an administrative board and has more flexibility than others, is that they're entitled to take another look and reach the right result. Isn't that your sense of why the board probably handled it if they did? To tell you the truth, I don't believe the board fully understood the law. I don't believe that that panel... Maybe it doesn't fully apply to an administrative board that is supposed to take the facts as they're presented to them. That's why I still think the facts are indisputable. The Federal Circuit... The facts are indisputable. The question is, is the judicial response to those facts equally indisputable? I believe they do favor Sharp again. I don't think they favor ThinkSharp. Whether you send it back again... But that would be on Merck. Correct. Not on Res Judicata. Correct. And maybe I'm missing your point, but I do... I'm really trying to understand the role of Res Judicata as it applies to the board and as to how it applies to this case. Again, I think the board does have to look at it from the mandatory perspective. If the three elements are met, as an agency or administrative board, they've got to follow basically the Federal Circuit's Res Judicata law. And if those three elements are met, they must follow that. Res Judicata applies. Otherwise, it cuts against the whole purpose of Res Judicata and preventing repetitive litigation where you have dissimilar results. As applies to lower courts. But whether that also applies to an administrative agency is perhaps an open question. I believe it should be the same question, though, because I do think in this country we want to have consistent results.  A lot of companies, you know, assess fairly the sharp trademark asset as the most important trademark asset my client has. And I think Res Judicata should be equally applied whether it's in an administrative forum or a district forum. Thank you, Your Honors. Thank you. Ms. Black, please take an understanding. Unless the court has any questions, I don't. Pardon? Unless the court has questions, I don't. No, no, please. Thank you. Thank you.